**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TERESA WELTER, *et al.*,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF<br>THE AIR FORCE,<br><br>   *Defendant*. | Civil Action No. 22‑3738 (SLS)<br>Judge Sparkle L. Sooknanan |

**MEMORANDUM OPINION**

Paul Welter served in the United States Air Force until his retirement. In 2020, when he and his wife Teresa were stationed in Germany with their two special needs daughters, the Welters reported sexual abuse of their daughters by contractors employed by the Department of Defense. Several months later, military and civilian authorities began investigating the Welters themselves for medical abuse and neglect. In 2022, in connection with these events, the Welters submitted requests to the Air Force under the Freedom of Information Act (FOIA), seeking documents related to the Air Force's investigations. The Welters then sued in this Court to compel the Air Force to produce certain documents. After more than three years of back-and-forth regarding the review and production of the documents, the Parties cross-moved for summary judgment. After reviewing the documents at issue *in camera*, the Court grants in part and denies in part both motions.

**BACKGROUND**

**A.**  **Statutory Background**

"FOIA 'implement[s] a general philosophy of full agency disclosure.'" *Informed Consent Action Network v. Nat'l Insts. of Health*, No. 23-cv-926, 2026 WL 585104, at *1 (D.D.C. Mar. 3,

2026) (alteration in original) (quoting *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989)). The statute "requires every federal agency, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'" *Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(3)). "Agencies must construe FOIA requests liberally and can only withhold or redact documents if the information requested 'falls within one of nine statutory exemptions.'" *Informed Consent Action Network*, 2026 WL 585104, at *1 (quoting *People for the Ethical Treatment of Animals* (*PETA*) *v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014)); *see* 5 U.S.C. § 552(b)(1)–(9). These exemptions demonstrate that the public's right to information is "not absolute and that disclosure of certain information 'may harm legitimate governmental or private interests.'" *Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) (quoting *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). The agency bears the burden of establishing that an exemption applies and ordinarily "must disclose all reasonably segregable, nonexempt portions of the requested record(s)." *PETA*, 745 F.3d at 540 (cleaned up).

B.    **Factual Background**

The Court draws the facts from the Defendant's Statement of Material Facts and the underlying materials referenced in that statement. *See* Def.'s Statement of Material Facts Not in Genuine Dispute (DSOF), ECF No. 36-2. The Court assumes the facts in that statement to be true unless they have been specifically disputed, and it assumes the truth of other undisputed statements in the record. *See* Fed. R. Civ. P. 56(e)(2); *see also* LCvR 7(h)(1).[1]

---

[1] Local Rule 7(h) provides that "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). The Welters did not file a statement of material facts, nor did they file a statement of genuine issues alongside their opposition to the Air Force's motion for summary judgment. *See* Pls.' Reply & Cross-Opp'n 2 n.1,

Mr. Welter is a retired member of the United States Air Force. Compl. ¶ 3, ECF No. 1. In 2020, Mr. Welter, Mrs. Welter, and their two daughters were stationed in Germany. Compl. ¶ 7. In November of that year, Mr. and Mrs. Welter reported that contractors employed by the on-base school had sexually abused their daughters. *Id.* After requesting humanitarian relocation, they returned to the United States in 2021 and took up residence in Virginia. Compl. ¶ 11.

Upon their return, the Welters learned that the Air Force Family Advocacy Program had referred them to Arlington County Child Protective Services based on an allegation of medical abuse by Mrs. Welter. Compl. ¶¶ 12–13. After an investigation, that agency determined that the case against Mrs. Welter was unfounded. Compl. ¶ 15. The Air Force Central Registry Board, however, continued with proceedings against the Welters, eventually concluding that their conduct "met the criteria for neglect." Compl. ¶¶ 16–17.

The Welters believe that the Board initiated the proceedings against them in response to their allegations of sexual abuse against Department of Defense contractors. Compl. ¶ 18. They filed FOIA requests to "understand the Air Force's relentless pursuit of them, and to clear their names." Mem. P&A Supp. Pls.' Mot. Summ. J. (Mot.) 2, ECF No. 35-1. Mr. and Mrs. Welter each submitted a FOIA request for "[a]ll case notes generated from March 2022 to present that are related to any Air Force Family Advocacy cases in which I, the requestor, am the subject." DSOF ¶¶ 1–2. Mr. Welter also submitted a request seeking "[a]ll documents currently held by the 316th Medical Squadron and/or Joint Base Anacostia Bolling Family Advocacy Program as they pertain to the initiation of an incident in which [he was] a subject." DSOF ¶ 3.[2]

---

ECF No. 38. In the Welters' view, their choice not to file such statements "is of no consequence[]." *Id.* But of course, that decision carries the consequence that "the Court may assume that facts identified by the [Air Force] in its statement of material facts are admitted." LCvR 7(h)(1).

[2] Curiously, the Welters' Complaint does not mention the first two requests—and for its part, the Air Force says that the Welters submitted those requests in March 2023, which is after this lawsuit

### C.      Procedural Background

In December 2022, the Welters sued the Air Force, alleging that the Air Force had failed to produce documents responsive to their requests. Compl. ¶¶ 28–32. Over three years have passed since then, during which the Air Force produced hundreds of pages, the Welters objected to withholdings, and the Air Force re-processed records. DSOF ¶¶ 4–12. Those years of litigation have culminated in cross-motions for summary judgment, which are ripe for review. *See* Pls.' Mot. Summ. J., ECF No. 35; Def.'s Opp'n & Cross-Mot. Summ. J. (Cross-Mot.), ECF No. 36; Pls.' Reply & Cross-Opp'n, ECF No. 38; Def.'s Cross-Reply, ECF No. 40. After reviewing the Parties' cross-motions, the Court directed the Parties to appear for a status conference at which the Court expected to ask the Air Force to address what appeared to be deficiencies in its stated reasons for the disputed withholdings. *See* Min. Order (Mar. 11, 2026). However, counsel for neither the Welters nor the Air Force appeared. *See* Min. Entry (Mar. 17, 2026). Accordingly, the Court ordered the Air Force to produce copies of the documents at issue for the Court's *in camera* review. Min. Order to Show Cause (Mar. 17, 2026). The Air Force complied with that order, and the Court has reviewed the documents *in camera*.

### LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA suit, an agency is entitled to summary judgment if it establishes that "no material facts are in dispute" and that all information subject to a request has either "been produced or is wholly exempt from the Act's inspection

---

began. DSOF ¶ 1–2. Yet the Welters never moved to amend their Complaint to bring those requests into this lawsuit. Neither the Welters nor the Air Force address this inconsistency, and the Court follows the Parties' lead in treating it as immaterial to resolving their cross-motions.

requirements." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (cleaned up).

Typically, an "agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions." *Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). And "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). But when the Court undertakes an *in camera* review of the agency's withholdings, "[t]he focus then shifts from" the agency's explanations "to the actual relationship between the claimed exemptions and the redacted material—the agency's ability to survive or obtain summary judgment is directly linked to whether information withheld is properly contemplated by the designated exemption, as described in the statute and elucidated by the case law." *Peter S. Herrick's Customs & Int'l Trade Newsletter v. CBP*, No. 04-cv-377, 2006 WL 1826185, at *3 (D.D.C. June 30, 2006).

## DISCUSSION

The Parties have narrowed their disputes to the Air Force's reliance on two FOIA exemptions—Exemption 5 and Exemption 2—to redact information from approximately fifty-nine pages. *See* Mot. 2 nn.1–2. The Court addresses each exemption in turn.

### A.    Exemption 5

Starting with Exemption 5, FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in

litigation with the agency." 5 U.S.C. § 552(b)(5). To qualify under this exemption, a document must "satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 606 (D.C. Cir. 2001) ("The test under Exemption 5 is whether the documents would be routinely or normally disclosed upon a showing of relevance by a party in litigation with the agency." (cleaned up)). Relevant here, Exemption 5 includes the deliberative-process privilege. *Klamath Water Users Protective Ass'n*, 532 U.S. at 8. "To carry its burden at summary judgment, the government must demonstrate that (A) the materials at issue are covered by the deliberative process privilege, and (B) it is reasonably foreseeable that the release of those materials would cause harm to an interest protected by that privilege." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021); *see* 5 U.S.C. § 552(a)(8)(A)(i)(I). The Welters do not dispute that the source of the disputed documents is a government agency, so the remaining questions are whether the Air Force has proven entitlement to the privilege as well as reasonably foreseeable harm.

### 1.       Deliberative Process Privilege

For a document to be covered by the deliberative process privilege, the document must be "both predecisional and deliberative." *Reps. Comm.*, 3 F.4th at 362. "A document is predecisional if it was 'generated before the agency's final decision on the matter[.]'" *Id.* (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021)). And such a document "is deliberative" if it was "prepared to help the agency formulate its position and it reflects the give-and-take of the consultative process." *Id.* (cleaned up). "In practice, these requirements 'tend

to merge.'" *Hall & Assocs. v. EPA*, 633 F. Supp. 3d 35, 52 (D.D.C. 2022) (quoting *Access Reps. v. DOJ*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)).

The Air Force has submitted a declaration from Starr Lewis, an Air Force FOIA officer, to detail and justify its withholdings. Lewis Decl. ¶ 1, ECF No. 36-1. Ms. Lewis described the types of documents at issue as: (1) "internal email communications within the Family Advocacy Program," (2) "email communications between the Family Advocacy Program and local state Child Protective Services personnel," and (3) "Family Advocacy Records that documented the investigation and provided information to help the Family Advocacy Program consider how the investigation should proceed." *Id.* ¶¶ 16–17. These descriptions are consistent with the Court's *in camera* review.[3]

The Welters argue that the Air Force has inadequately supported its position that these documents are entitled to the deliberative process privilege. In their view, the Air Force has failed to establish both that the documents are predecisional and that they are deliberative.

*Predecisional.* The Welters first contend that the disputed documents are not predecisional because the Air Force has not identified the agency action to which the documents pertain. Pls.' Reply & Cross-Opp'n 3. The Court disagrees. To support that withheld information is predecisional, courts have required the agency to "establish what deliberative process is involved,

---

[3] Ms. Lewis also identified one document as "a Family Advocacy Program internal memorandum . . . which provided legal analysis and recommendations for responding to" a request from Mrs. Welter. Lewis Decl. ¶ 18. The Welters did not address the agency's withholdings from this document, *see* Pls.' Reply & Cross-Opp'n 3–5, despite the Air Force separately addressing it in its cross-motion for summary judgment, Cross-Mot. 6–7. Thus, to the extent that the Welters dispute the Air Force's withholdings with respect to this document, they have forfeited that objection. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

and the role played by the documents in issue in the course of that process." *Hall & Assocs.*, 633 F. Supp. 3d at 52 (quoting *Senate of the Commonwealth of Puerto Rico ex rel. Judiciary Comm. v. DOJ*, 823 F.2d 574, 585–86 (D.C. Cir. 1987)). Put differently, an agency must "tie the materials to some definable process," but it is "not required to link each document to a specific action." *Public Emps. for Env't Resp. v. EPA*, 213 F. Supp. 3d 1, 14 (D.D.C. 2016).

Here, the Air Force has sufficiently established that the withheld information is predecisional. Ms. Lewis explained that the documents at issue are "related to the Air Force's investigation into allegations of child abuse neglect of the Welter[s'] two minor children." Lewis Decl. ¶ 16. In particular, the emails "collected, sorted, evaluated, and analyzed various facts" uncovered during that process, and the Air Force withheld "comments, questions, and directions on how to investigate the allegations." *Id.* ¶ 21. The Family Advocacy Records similarly "documented the investigation and provided recommendations for the investigation." *Id.* ¶ 22. These representations plausibly and logically demonstrate that the withheld information was predecisional because it was part of the Air Force's ongoing investigation into the Welters. *See Wolf*, 473 F.3d at 374–75.

The Welters argue that this is insufficient, objecting that the Air Force has not identified "the final Agency decision" or "the exact deliberative process at play." Pls.' Reply & Cross-Opp'n 4. The cases they cite for support, however, involved decisionmaking processes described at a much higher level of generality. For instance, in *Public Employees for Environmental Responsibility v. EPA*, the agency explained that the redacted email discussion at issue "reflec[ed] pre decisional deliberations between [Environmental Protection Agency (EPA)] employees about EPA's response to [an] emerging issue," that "the EPA was still deliberating on the best Agency-wide approach for coordinating its response," and that EPA staff was "still

internally discussing issues concerning [chemicals] in schools." 213 F. Supp. 3d at 13–14. The court concluded that it could not determine that the redacted emails were predecisional because it was unclear which of these separate processes—the EPA's response to the emerging issue, its deliberation of an agency-wide approach, or actions regarding schools—generated the emails. *Id.* at 14. Similarly, in *Center for Investigative Reporting v. CBP*, the agency stated that the withheld documents were part of "administering the evolving and ongoing border wall contracting, procurement, and construction process." 436 F. Supp. 3d 90, 101–02 (D.D.C. 2019). This high-level description, the court concluded, lumped together "a three-fold contracting, procurement, and construction process" under a "nebulous umbrella" that was inadequate to support a determination that the documents at issue were predecisional. *Id.* at 102 (cleaned up).

Unlike those cases, the Air Force has identified a reasonably definite process: its investigation into allegations that the Welters had neglected their children. Indeed, the withheld information at issue here is akin to documents created during government investigations that courts in this District have concluded qualify as predecisional. *See, e.g.*, *Hall & Assocs.*, 633 F. Supp. 3d at 52 ("a staff attorney's identification and distillation of key information from ongoing discussions on . . . [an] enforcement action, along with the staff attorney's analysis of how the information affects the administrative enforcement action and recommendations for how to proceed" (internal quotation marks omitted)); *Schneider v. DOJ*, 498 F. Supp. 3d 121, 128 (D.D.C. 2020) (a document that "initiated and served as a preliminary step in DOJ's larger analysis as to whether or not a criminal investigation and/or prosecution was warranted"). Thus, the Court concludes that the Air Force has carried its burden to establish that the withheld information is predecisional.

*Deliberative*. Next, the Welters argue that the Air Force has failed to demonstrate that the withheld information is deliberative. Pls.' Reply & Cross-Opp'n 6–7. Deliberative documents

contain a "back-and-forth exchange of ideas, constructive feedback, and internal debate." *Reps. Comm.*, 3 F.4th at 364. "Factual material that does not reveal the deliberative process is not protected[.]" *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (quoting *Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983)).

As explained above, Ms. Lewis attested that the Air Force withheld the "portions of the" emails at issue "that considered investigative information to help determine how the investigations should proceed." Lewis Decl. ¶ 16. These emails "collected, sorted, evaluated, and analyzed various facts of an ongoing investigation of child abuse and neglect," and contained "comments, questions, and directions on how to investigate the allegations." *Id.* ¶ 21. Similarly, the Family Advocacy Records "documented the investigation and provided recommendations for the investigation." *Id.* ¶ 22; *see also id.* ¶ 17 (they "provided information to help the Family Advocacy Program consider how the investigation should proceed"). Having reviewed the documents *in camera*, the Court agrees that some withheld information constitutes give-and-take discussion and advice about what steps to take during an ongoing investigation, meaning that it is "core deliberative-process material." *Hall & Assocs.*, 633 F. Supp. 3d at 61. However, a substantial portion of the withholdings fall outside the deliberative process privilege.

Besides containing questions and advice, many of the redacted portions of the documents include factual information about the status of the military and civilian investigations into the Welters. The D.C. Circuit has recognized that although "factual information is generally not protected by the deliberative process privilege, factual information is protected . . . if its disclosure may so expose the deliberative process within an agency." *Nat'l Ass'n of Minority Veterans v. U.S. Dep't of Veterans Affs.*, No. 21-cv-1298, 2024 WL 810032, at *10 (D.D.C. Feb. 27, 2024) (cleaned up). For instance, disclosure may expose the deliberative process if it contains "factual material

assembled through an exercise in judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." *Id.* (cleaned up). But this "limited exception to the general principle that purely factual material may not be withheld under Exemption 5 may not be read so broadly . . . as to swallow the rule"—"a record 'does not become part of the deliberative process merely because it contains only those facts which the person making the [record] thinks material.'" *Id.* (quoting *Nat'l Whistleblower Ctr. v. HHS*, 849 F. Supp. 2d 13, 37–38 (D.D.C. 2012)).

The Air Force properly redacted some factual information from the documents because that information was "so inextricably intertwined with the deliberative sections" of the documents "that its disclosure would inevitably reveal the government's deliberations." *Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 77 (D.D.C. 2017). For example, one email with the subject line "FOUO\\Notification Guidance" characterizes certain information as important to communicate to another individual involved in the investigations, going on to suggest answers to questions that the individual might ask. Other emails informed superiors about advice exchanged between subordinates. But the Air Force also incorrectly redacted factual information from documents that do no more than recount events without containing "comments" and "questions" "on how to investigate the allegations," *contra* Lewis Decl. ¶ 21, or containing "recommendations for the investigation," *contra id.* ¶ 22. It also incorrectly redacted documents that did nothing more than state the author's planned next steps without expressing or inviting "constructive feedback" or "internal debate." *Reps. Comm.*, 3 F.4th at 364. These emails might "collect[]" factual developments, Lewis Decl. ¶ 21, or "document[]" the investigation, *id.* ¶ 22, but they do not do so in a way that protects them from disclosure under Exemption 5, *see Nat'l Ass'n of Minority Veterans*, 2024 WL 810032, at *10.

Further, as Ms. Lewis identified, one email contains "directions on how to investigate the allegations." Lewis Decl. ¶ 21. Yet neither Ms. Lewis nor the Air Force explains why such directions qualify as deliberative. "[I]nstructions from a superior to a subordinate, rather than recommendations from the subordinate to the superior, are not always considered part of the deliberative process[.]" *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 23 (D.D.C. 2004). The Court concludes that the information in the email does not qualify. In the email,[4] after receiving recommendations from her subordinates, a superior informs her team about how she wants to proceed. That directive puts an end to a "back-and-forth exchange of ideas, constructive feedback, and internal debate"—and instead gives her subordinates their marching orders. *See Reps. Comm.*, 3 F.4th at 364; *see also Nat'l Sec. Couns. v. CIA*, No. 12-cv-284, 2016 WL 6684182, at \*35 (D.D.C. Nov. 14, 2016) ("Directions to deliberate do not themselves constitute deliberation.").

In sum, although some of the documents at issue contain material within the core of the deliberative-process privilege, other portions of the documents are not covered by Exemption 5. The Appendix attached to this Memorandum Opinion specifies the portions of the documents that the Court has concluded are not protected by Exemption 5.

### 2.    Foreseeable Harm

Having concluded that the Air Force properly invoked the deliberative-process privilege for some portions of the disputed documents, the Court turns next to whether "it is reasonably foreseeable that the release of [the withheld] materials would cause harm to an interest protected by that privilege." *Reps. Comm.*, 3 F.4th at 361; *see* 5 U.S.C. § 552(a)(8)(A)(i)(I). "In the context

---

[4] The email has the subject line: "RE: FOUO\\RE: [Non-DoD Source] [FWD: Release Authorizations] Welter."

of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Reps. Comm.*, 3 F.4th at 369–70 (quoting *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)). "[W]hat is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370.

In her declaration, Ms. Lewis stated that release of the disputed information "would have a chilling effect on how members of the Family Advocacy Program report, exchange, and evaluate sensitive information involving our most vulnerable members of society[—]children." Lewis Decl. ¶ 21. She specified that the "chilling effect would negatively impact Family Advocacy Program employees' willingness to share raw unrefined ideas[] and candid feedback should they know that their communications could become subject to public disclosure." *Id.* Ms. Lewis further stated that release "would discourage witnesses, including medical providers and child victims[,] from reporting information about abuse out of fear that the information shared could become subject to public disclosure or[,] even worse[,] disclosure to the individual accused of abuse." *Id.* And she noted that release "would help would[-]be child abusers thwart investigation by learning the information the Family Advocacy Program considered when investigating allegations of child abuse or neglect." *Id.*

The Welters argue that these explanations are insufficient because the Air Force failed to connect these concerns to the information withheld. Pls.' Reply & Cross-Opp'n 7–8. The Court disagrees. Ms. Lewis explained that release of withheld "comments, questions, and directions on how to investigate the allegations" against the Welters would impinge "Family Advocacy Program

13

employees' willingness to share raw unrefined ideas[] and candid feedback." Lewis Decl. ¶ 21. This explanation "appropriately specif[ies] a particular harm that would result from disclosure and link[s] that harm to the specific type of information contained in the withheld material." *Hall & Assocs.*, 633 F. Supp. 3d at 72–73. And the harm that Ms. Lewis identifies is within the core purpose of Exemption 5, which is "to preserve open and frank discussion among government officials in order to enhance the quality of agency decisions." *Inst. for Energy Rsch. v. FERC*, No. 22-cv-2114, 2023 WL 6121878, at *6 (D.D.C. Sept. 19, 2023) (cleaned up). Further, based on the Court's review of the documents *in camera*, the portions covered by the deliberative-process privilege include discussions about how to best handle delicate decisions relating to the allegations against the Welters. Ensuring that decisionmakers in the Family Advocacy Program can hold these frank discussions without fear of disclosure is precisely what Exemption 5 is meant to accomplish.

Indeed, other courts in this District have concluded that similar interests are sufficient to support invoking Exemption 5. *See, e.g.*, *Keeping Gov't Beholden, Inc. v. DOJ*, No. 17-cv-1569, 2021 WL 5918627, at *10 (D.D.C. Dec. 13, 2021) ("disclosure of this draft of [former FBI Director James] Comey's statement would reveal the drafters' evolving thought-processes regarding these subjects, as well as ideas and alternatives considered but ultimately rejected by the Director, and thus would undermine the ability of future directors to freely engage in the candid give and take and to seek advice and input" (cleaned up)); *Machado Amadis*, 971 F.3d at 371 ("OIP's affidavit adequately explained that full disclosure of [internal memoranda recommending dispositions to agency adjudicators] would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.'"). Like in those cases, the Air Force's description of the harm here goes beyond a "boilerplate and generic assertion[] that release of any

14

deliberative material would necessarily chill internal discussions." *Reps. Comm.*, 3 F.4th at 370. Thus, the Air Force's "amount of justification suffices." *Hall & Assocs.*, 633 F. Supp. 3d at 73.

* * *

Taking a step back, the Air Force has properly invoked Exemption 5 to justify some withholdings. However, there are other withholdings that are not justified by that exemption. The Court will grant summary judgment in favor of the Welters with respect to the Air Force's invocation of Exemption 5 for the portions of the documents identified in the table in the attached Appendix. For all other portions not so identified, the Court will grant summary judgment in favor of the Air Force with respect to Exemption 5.

## B.    Exemption 2

The Welters also dispute the Air Force's invocation of FOIA Exemption 2. That exemption "covers matters 'related solely to the internal personnel rules and practices of an agency.'" *Elliott v. USDA*, 596 F.3d 842, 845 (D.C. Cir. 2010) (quoting 5 U.S.C. § 552(b)(2)). "The Supreme Court has held that the statutory phrase 'personnel rules and practices' refers to an agency's 'rules and practices dealing with employee relations or human resources.'" *Price v. DOJ*, No. 18-cv-1339, 2020 WL 3972273, at *9 (D.D.C. July 14, 2020) (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 570 (2011)). That means that "Exemption 2 only encompasses information that pertains solely to 'the conditions of employment in federal agencies—such matters as hiring and firing, work rules and discipline, compensation and benefits.'" *Id.* (quoting *Milner*, 562 U.S. at 570).

The Parties appear to agree that there is only one withholding under Exemption 2 at issue: an email with the subject line "Email Policy AFI 41-200." *See* Mot. 7; Cross-Mot. 9; *see also* Cross-Mot. Ex. I at 3, ECF No. 36-11. Ms. Lewis's declaration says nothing about this withholding. The *Vaughn* index prepared by the Air Force states that "[t]his communication was

15

part of a discussion concerning the internal practices sole[l]y related to the Department of the Air Force." Mot. Ex. 1 at 4, ECF No. 35-2.[5]

Most of the space in both Parties' briefs addressing this exemption is spent accusing the other side of forfeiture. The Welters argue that the Air Force forfeited any argument supporting Exemption 2 by failing to address the exemption in their Opposition and Cross-Motion for Summary Judgment. Pls.' Reply & Cross-Opp'n 8. *But see* Cross-Mot. 9 (briefly addressing Exemption 2). The Air Force argues that the Welters forfeited any argument opposing the exemption by failing to controvert the Air Force's assertion in its Statement of Material Facts that the Welters "only challenge the Air Force's application of the deliberative process privilege pursuant to FOIA Exemption 5." DSOF ¶ 16; Reply 1–3. *But see* Mot. 7 (challenging the withholding under Exemption 2). Because both Parties have addressed the exemption in their opening briefs (albeit briefly), the Court declines to resolve this issue on the basis of forfeiture and instead proceeds to addressing the merits of the withholding.

On the merits, Exemption 2 does not permit withholding the redacted portion of the email. The Air Force asserts that "it is clear" from the email "that the Family Advocacy Program employees were discussing the policy for emailing patients." Cross-Mot. 9. Having reviewed the document *in camera*, a more accurate description is that it concerns the past practice for contacting patients. But either way, Exemption 2 does not support the withholding. The Supreme Court "expressly rejected an interpretation of Exemption 2 that would 'encompass[] records concerning an agency's internal rules and practices for its personnel to follow in the discharge of their governmental functions.'" *Price*, 2020 WL 3972273, at *9 (emphasis omitted) (quoting *Milner*,

---

[5] There are two entries in the *Vaughn* index invoking Exemption 2. *See* Mot. Ex. 1 at 4, 6. The Parties do not identify which of these entries correspond to the disputed email. Regardless, both entries contain the same language justifying invoking that exemption. *Id.*

562 U.S. at 577). The Air Force's policy about when to email patients is one that is "*for* personnel," not "*about* personnel—*i.e.*, [one that] relates to employee relations or human resources." *Milner*, 562 U.S. at 578. And the Air Force does not explain how its arguments square with *Milner*.

Thus, the Court concludes that the disputed email is not covered by Exemption 2. The Court will grant summary judgment in favor of the Welters with respect to this document and will deny the Air Force's cross-motion. The Air Force may not rely on Exemption 2 to withhold the email at issue.

## CONCLUSION

For the foregoing reasons, with respect to Exemption 5, the Court grants in part and denies in part the Welters' Motion for Summary Judgment, ECF No. 35, and grants in part and denies in part the Air Force's Cross-Motion for Summary Judgment, ECF No. 36. With respect to Exemption 2, the Court grants the Welters' Motion for Summary Judgment and denies the Air Force's Cross-Motion for Summary Judgment.

A separate order will issue.

<br>

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   May 6, 2026

17

**APPENDIX**

| December 2022 Production | | |
|---|---|---|
| **Page** | **Portion Not Subject to Exemption 5** | **Reason** |
| 28 | Paragraph starting "CPS made phone" and ending "work with CPS." | Merely states facts. |
| 33 | Paragraph starting "CPS made phone" and ending "work with CPS." | Merely states facts. |
| 96 | Paragraph and numbered lines starting "From your email" and ending "that makes sense." | Directive from superior. |
| 102 | Paragraph starting "I just spoke" and ending "this next week." | Merely states facts. |
| 103 | Paragraph and bulleted lines starting "The PO is" and ending "Guardian ad Litem." | Merely states facts. |
| 103 | Paragraphs starting "CPS stated if" and ending "info with attorneys." | Merely states facts. |
| 104 | Carryover paragraph starting "outside of process" and ending "with our office." | Merely states facts. |
| 118 | Sentence starting "Of note: CPS" and ending "to being AD." | Merely states facts. |
| 124 | Sentences starting "Lastly, CPS is" and ending "you on this." | Merely states facts. |
| 138 | Paragraph starting "I just spoke" and ending "this next week." | Merely states facts. |
| 139 | Paragraph and bulleted lines starting "The PO is" and ending "Guardian ad Litem." | Merely states facts. |
| 139 | Paragraphs starting "CPS stated if" and ending "info with attorneys." | Merely states facts. |
| 145 | Paragraphs starting "There has been" and ending "increase his anger." | Merely states facts.[6] |
| 183 | Sentence starting "They were deferred" and ending "CPS still investigating." | Merely states facts. |
| 183 | Sentences starting "In FAP we" and ending "open CPS case." | Merely states facts. |
| 189 | Paragraphs starting "Arlington CPS had" and ending "information, thank you." | Merely states facts. |
| 210 | Sentences starting "Share the same" and ending "her own report." | Merely states facts. |
| 211 | Sentences starting "Despite my multiple" and ending "now at 2150." | Merely states facts. |
| 215 | Sentences starting "Prince William informed" and ending "now at 2150." | Merely states facts. |

[6] Although portions of this email appear to be deliberative, the Air Force already disclosed those portions elsewhere in this production (*e.g.*, page 118), thus waiving its reliance on Exemption 5. *See Hall v. DOJ*, 552 F. Supp. 2d 23, 30–31 (D.D.C. 2008) ("The court agrees that, to the extent that the non-redacted portions specifically identify the names of individuals in specific redacted portions of the documents, DOJ cannot redact these names. The FOIA exemptions do not apply once the information is in the public domain.").

| 220 | Sentences starting "Wanted to follow" and ending "the appropriate county." | Merely states facts. |
|---|---|---|
| 222 | Portion of sentence starting "thus Prince William" and ending "do an assessment." | Merely states facts. |
| 246 | Sentences starting "I made my" and ending "with the family." | Merely states facts. |
| 249 | Paragraphs starting "He informed me" and ending "can collaborate with." | Merely states facts. |
| 252 | Paragraphs starting "I received a" and ending "can collaborate with." | Merely states facts. |
| 405 | Sentence starting "fao will continue" and ending "noted in email." | States non-deliberative future plans. |
| 422 | Sentence starting "After this another" and ending "should be dropped." | States non-deliberative future plans. |
| 422 | Sentence starting "FAO will stay" and ending "as risk indicates." | States non-deliberative future plans. |
| 451 | Paragraph starting "I had the" and ending "by the deadline." | Merely states facts. |

| January 2023 Production | | |
|---|---|---|
| Page | Portion Not Subject to Exemption 5 | Reason |
| 250 | Sentence starting "I wanted to" and ending "not come in." | Merely states facts. |
| 250 | Paragraph starting "Also, I am" and ending "lengthen the process." | Merely states facts. |
| 279 | Paragraphs starting "I spoke with" and ending "as the offender." | Merely states facts. |
| 281 | Paragraphs starting "Wanted to provide" and ending "to her emails." | Merely states facts. |
| 281 | Sentence starting "Lastly, our team" and ending "as alleged victims." | States non-deliberative future plans. |
| 283 | Paragraphs starting "[Name] called me" and ending "information, thank you." | Merely states facts. |
| 284 | Paragraphs starting "Wanted to update" and ending "to report it." | Merely states facts. |